## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JOHNNY D. TURNBOE,**

     **Plaintiff,**               **CIVIL ACTION NO. 14-CV-12941**

**vs.**                             **DISTRICT JUDGE GERALD E. ROSEN**

                                    **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

_____/

### REPORT AND RECOMMENDATION

Plaintiff Johnny Turnboe, proceeding in this matter *pro se*, seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to Social Security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's (Second) Motion for Summary Judgment (docket no. 22) and Defendant's Motion for Summary Judgment (docket no. 26).  Plaintiff filed a Response to Defendant's Motion.[1]  (Docket no. 30.)  The motions have been referred to the undersigned for a

---

[1] Also pending in this matter are Plaintiff's initial Motion for Summary Judgment (docket no. 11) and Motion to Allow Additional Response and Supporting Documents (docket no. 31). Plaintiff's initial Motion for Summary Judgment was filed prematurely; moreover, while not filed in the Court's docket, Plaintiff included a separate Motion to Strike his initial Motion for Summary Judgment along with the Judge's Copy of his latter motion.  Therefore, the undersigned has considered Plaintiff's (Second) Motion for Summary Judgment (docket no. 26) for purposes of this Report and Recommendation.   And as recommended herein, the Court should deny Plaintiff's Motion to Allow Additional Response because it violates E.D. Mich. L.R. 7.1(d)(3)(B) and 5.1(a), which limit a reply brief to 7 pages, double-spaced, using 14 point font.  Plaintiff's proposed Reply brief far exceeds these specifications.  (*See* docket no. 31.)  Plaintiff's initial Reply brief (docket no. 30) also exceeds these specifications, but the undersigned has considered it nonetheless.

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   (Docket no. 4.)   The Court

has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and

issues this Report and Recommendation.

## I.      Recommendation

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no.

22) be GRANTED IN PART AND DENIED IN PART and that Defendant's Motion for Summary

Judgment (docket no. 26) be DENIED.   This matter should be remanded under sentence six of 42

U.S.C. § 405(g) for consideration of new evidence related to Plaintiff's hernia as discussed herein.

Plaintiff's Motion for Summary Judgment should be denied with regard to all other arguments.

Additionally, the Court should deny Plaintiff's initial Motion for Summary Judgment

(docket no. 11) as moot and strike Plaintiff's Motion to Allow Additional Response (docket no.

31) for violation of Local Rules.

## II.     Procedural History

Plaintiff initially filed applications for Disability Insurance Benefits on April 22, 2005, and

again on May 9, 2009, both of which were denied at the initial level.   (*See* TR 14.)   Plaintiff

requested hearings, but his requests were denied for abandonment, and he did not appeal the

denials.   Plaintiff then filed his at-issue application for Disability Insurance Benefits with a

protective filing date of September 8, 2011, alleging that he had been disabled since March 10,

1965, due to back and hip problems, including scoliosis, pain related to an old gunshot wound, and

hemorrhoids.   (*See* TR 15, 17.)   The Social Security Administration denied benefits.   (*See* TR

157.)   Plaintiff requested a *de novo* hearing, which was held on November 28, 2012, before

Administrative Law Judge (ALJ) Ramona L. Fernandez, who subsequently found that Plaintiff

2

was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 15-24.)   The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review.   The parties then filed their instant Motions.

III.   **Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony**

Plaintiff does not set forth a statement of facts; instead, he includes his factual allegations throughout his argument.  (*See* docket no. 22.)   Defendant adopts the ALJ's recitation of facts. (Docket no. 26 at 4.)   The ALJ sets out a detailed factual recitation with regard to Plaintiff's medical record, Plaintiff's hearing testimony, and the VE's testimony.   (TR 18-22, 23-24.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between the ALJ's factual account and the record in this matter.   Therefore, the undersigned will incorporate the ALJ's factual recitation by reference.   Additionally, the undersigned will include comments and citations as necessary throughout this Report and Recommendation, including a discussion of new medical evidence, which Plaintiff argues should be considered on remand.

IV.   **Administrative Law Judge's Determination**

The ALJ found that although Plaintiff had worked at several jobs from 2009 through the date of her decision, that he had not engaged in substantial gainful activity since September 8, 2011, his application date; and that he suffered from severe Dextroscoliosis, degenerative disc disease, degenerative joint disease, back and hip pain, and status post gunshot wound.  (TR 16-17.)   The ALJ also found, however, that Plaintiff's hemorrhoids were not medically determinable or, in the alternative, were non-severe.  (TR 17.)   The ALJ then found that his

impairments did not meet or equal those listed in the Listing of Impairments.   (TR 18.)

Next, The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not wholly credible and that Plaintiff could perform light work with the following additional limitations:

> [T]he claimant can never use ladders, ropes, or scaffolds, but may occasional (sic) climb, stoop, kneel, crouch, crawl or balance and occasionally bend or twist at (sic) waist.   He must avoid unprotected heights.

(TR 18-22.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing work as an assembler, a packer, or an inspector.   (TR 23-24.)   Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from September 8, 2011, through the date of her decision.   (TR 24.)

## V.     Law and Analysis

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.   *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745

F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.   Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.   In the first four steps, Plaintiff was required to show that:

(1)   Plaintiff was not presently engaged in substantial gainful employment; and

(2)   Plaintiff suffered from a severe impairment; and

(3)   the impairment met or was medically equal to a "listed impairment;" or

(4)   Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."

*Her*, 203 F.3d at 391.   To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"   *Id.* (citations omitted).

### C.   Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."   *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).   Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.   42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."   *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).   Plaintiffs Motion for Summary Judgment sets forth numerous "Claims," including arguments related to the treating physician rule, discrimination and prejudice by the ALJ, a failure to "properly assess [his] RFC," a lack of substantial evidence to support the ALJ's decision, and a failure to properly consider new evidence.   (*See* docket no. 22 at 3.)   In substance, however, Plaintiff asserts that this matter

should be reversed or remanded because (1) Plaintiff has provided new and material evidence that should be considered on remand; (2) the ALJ did not properly consider treatment or reports from Dr. Cavell, Plaintiff's treating physician; (3) the ALJ did not properly weigh the opinions of Drs. Jacobson and Tsekhanov; (4) the ALJ did not properly determine Plaintiff's credibility; and (5) the ALJ did not properly consider Plaintiff's impairments at Step III.   (*See id.* at 5-16.)

### 1.    The Medical Evidence of Record

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.   20 C.F.R. § 404.1527(c)(2).   But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician.   *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).   Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight."   *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).   The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1).   The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.   20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."   20 C.F.R. § 404.1527(c)(2).   Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).   If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.   *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.   Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.   Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence.   *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Nevertheless, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision.   *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008).   There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).   *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v.*

*Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).   Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

Plaintiff contends, in two separate "Claims," that the ALJ erred by not giving controlling weight to the opinion of his treating physician, Dr. Cavell, and by relying on the conflicting opinions of two state agency physicians, Drs. Jacobson and Tsakhanov.   (Docket no. 22 at 5-6.) Plaintiff asserts that the ALJ failed to even Mention Dr. Cavell and that she, instead, erroneously relied on assessments made in 2009, which Plaintiff argues was improper where the ALJ decided not to reopen his prior applications.   (*Id.*)   He then argues that it was improper for the ALJ to give Dr. Jacobson's opinion the same weight as Dr. Tsakhanov's opinion where Dr. Jacobson's opinion was authored two years earlier; that is, Plaintiff argues that his condition deteriorated in the time after he saw Dr. Jacobson and before he saw Dr. Tsakhanov.   (*Id.* at 6.)

As Defendant notes, the extent of the evidence related to Dr. Cavell consists of two pages of medical records, one of which appear to be Dr. Cavell's notes from Plaintiff's single interaction with him.   (TR 184.)   The second page is an MRI report from Basha Diagnostics, apparently performed on a referral from Dr. Cavell.   (TR 185.)   The record does not contain any opinions whatsoever from Dr. Cavell, let alone any opinions related to Plaintiff's functional limitations.

Nevertheless, the ALJ did specifically consider the Basha Diagnostics report in determining Plaintiff's RFC.   (TR 20 (citing exhibit C3F).)   Therefore, even though the ALJ did not mention Dr. Cavell by name, Plaintiff's argument fails.

With regard to the reports of Drs. Jacobson and Tsakhanov, the record is similarly devoid of any opinions from these two doctors regarding Plaintiff's functional limitations.   Nevertheless, the ALJ discussed both reports in detail and gave them both "some weight."   The ALJ even limited Plaintiff's ability to bend and twist at the waist beyond what was supported by the doctor's reports based on evidence received at Plaintiff's hearing.   (TR 20.)   Most notably, though, Plaintiff provides no insight regarding what additional functional limitations he believes the ALJ should have included in his RFC based on affording more weight to Dr. Tsakhanov's report. Therefore, Plaintiff's argument fails with regard to the medical opinions of record.

### 2.      The ALJ's Step III Determination

Although somewhat convoluted and spread out through several "Claims," Plaintiff appears to assert that the ALJ erred in not finding him disabled at Step III; specifically, Plaintiff argues that the ALJ should have found him disabled under Listing 1.02 (Major Dysfunction of a Joint(s)), Listing 1.04 (Disorders of the Spine), Listing 5.00 (Digestive System), or Listing 14.09a (Inflammatory Arthritis).   (Docket no. 22 at 9, 10-11, 13-15.)

### i.      Listing 1.02 and 14.09a

Plaintiff argues that he meets the requirements for Listing Section 1.02 because of "mild osteoarthritis bilateral hips . . . in the form of juxaarticular sclerosis and joint space narrowing." In her analysis, the ALJ noted as follows:

> Looking at Listing 1.02 major dysfunction of a joint, the claimant does not have
> medical evidence of involvement of one major peripheral weight-bearing joint

resulting in the inability to ambulate effectively, or involvement of one major peripheral joint in each upper extremity, resulting in ability (sic) to perform fine and gross movements effectively.

(TR 18.)

Under Listing 1.02, Major Dysfunction of a Joint, is

[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02.  Likewise, Listing 14.09 requires a

showing of:

Persistent inflammation or persistent deformity of:

One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; or

One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively.

*Id.*, Section 14.09(A).   Section 1.00 defines the term *ambulate effectively*:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

11

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*, Section 1.00B(2)(B).

While Plaintiff has been diagnosed with scoliosis, the ALJ did not err in finding that Plaintiff failed to provide any evidence of an inability to ambulate effectively.   To the contrary, even if the ALJ had found that Plaintiff required the use of a cane (as discussed below), the ALJ noted that Plaintiff has the ability to walk (and does walk) two miles to church.   (TR 19, 21.) And although Plaintiff asserts that he does so for shelter, the *reason* Plaintiff walks to church is irrelevant; for purposes of a Step III analysis, he is *able* to do so.   Therefore, the ALJ did not err in finding that Plaintiff's impairments did not equal Listing 1.02 or 14.09.

### ii.   Listing 1.04

Plaintiff also argues that the ALJ erred in finding that his scoliosis did not equal Listing 1.04.   The ALJ found as follows:

The Claimant's condition does not meet the requirements of Listing 1.04 because he does not have evidence of nerve root compression, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

(TR 18.)

Under Listing 1.04, disorders of the spine are defined as those:

resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

12

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.

Plaintiff asserts that his sciatica is "clearly evidence of nerve root compression," which he asserts was included in the medical records that he provided to the ALJ.   (Docket no. 22 at 13.) Notably, none of Plaintiff's doctors included a diagnosis of sciatica in his the medical records before the ALJ.   (*See* TR 180-210.)   Moreover, although Plaintiff has a curvature of the spine and mild degenerative changes, his physicians have not diagnosed any nerve root compression or any other relevant spinal disorder.   (*Id.*)   Therefore, Plaintiff's argument fails.

### iii.   Listing 5.00

Finally, Plaintiff asserts that the ALJ should have found that his impairments equaled those in Listing 5.00.   Listing 5.00 refers to disorders of the digestive system, including "gastrointestinal hemorrhage, hepatic (liver) dysfunction, inflammatory bowel disease, short bowel syndrome, and malnutrition."   20 C.F.R. Part 404, Subpart P, Appendix 1, Section 5.00(A). But Plaintiff does not allege that he suffers from any digestive system disorders.   Instead, Plaintiff appears to assert that because he suffers from abdominal pain, the ALJ should have considered this

13

Listing.   Plaintiff's argument fails as a matter of law.

### 3.        The ALJ's Credibility Determination

"An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).   But credibility assessments are not insulated from judicial review.   Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.   Id.   An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*   "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."   20 C.F.R. § 416.929(c)(2).   The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5)

14

treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); s*ee also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff was not wholly credible for the following reasons:

- The "level and/or frequency of treatment are inconsistent with the level of [Plaintiff's] complaints," where Plaintiff had no treatment from 2010 to 2012 with the exception of one emergency room visit;

- While it "may not be the result of a conscious intention to mislead," the inconsistencies in Plaintiff's reporting with regard to the need of a cane for ambulation "suggest that the information provided by the claimant generally may not be entirely credible;"

- Plaintiff "described daily activities, which are not limited to the extent one would expect;"

- Because Plaintiff has had difficulty finding work and suffers from financial hardship, his "motivation for obtaining benefits could be related to financial gain;"

- Plaintiff "worked after his allegedly disabling impairment(s)" "continue[d] to seek employment" at the time of the hearing, and would do "odd jobs" where he would lift "whatever was necessary," which "strongly suggests that [his impairments] would not currently prevent work;" and

- Although Plaintiff visited several doctors for his conditions none of them indicated that Plaintiff was restricted from working in any way.

(TR 21-22.)

Plaintiff first argues that the ALJ should have considered that his lack of treatment stemmed from a lack of health insurance.   (Docket no. 22 at 7.)   But the ALJ did take Plaintiff's financial condition into consideration, noting that Plaintiff "lives in a homeless shelter and does not have money; he has been denied medical insurance through the state."   (TR 19.)   She found, however, that despite Plaintiff's financial situation, he had only visited an emergency room one time between 2010 and 2012 and had not taken any medication with the exception of five doses or

15

Norco, which were prescribed when he visited the ER in 2011.   (TR 21.)

Next, Plaintiff asserts that the ALJ improperly found that he was dishonest with regard to his use of a cane.   (Docket no. 22 at 7.)   Plaintiff asserts that he was "completely honest with the ALJ and gave more than an adequate explanation for any discrepancies between the function report and testimony."   (*Id.*)   But Plaintiff misses the point.   The ALJ noted that these discrepancies "may not be the result of a conscious intention to mislead," but found that the mere existence of the discrepancies cast doubt on the accuracy of Plaintiff's functional reports and testimony.   The ALJ did not err in reaching this conclusion.

Plaintiff then argues that the ALJ erred in finding that his search for work and his ability to perform odd jobs impugned his credibility.   (*Id.*)   But again, Plaintiff's argument misinterprets the ALJ's finding and the law.   Plaintiff contends that the ALJ should not have considered this evidence because the work he performed did not amount to substantial gainful activity.   But the ALJ did not find that Plaintiff's prior work precluded him from disability; any such finding would have been made at Step I of the ALJ's analysis.   Instead, when considering whether Plaintiff's statements were credible, the ALJ found that an individual with Plaintiff's alleged disabilities would likely not have been searching for work and would not have been able to perform work "as much as possible" to support himself.   (TR 22.)   To put it simply, the ALJ found that it would be logically impossible for Plaintiff to be physically able to perform work and be unable to work at the same time.   The ALJ did not err in finding that this evidence harmed Plaintiff's credibility.

Finally, Plaintiff argues that the ALJ discriminated against him because he was an ex-offender.   Plaintiff makes much ado about the ALJ's statement that he is a "convicted felon," arguing that "[t]he ALJ implies that because plaintiff was a 'convicted felon,' other considerations

of substantial, objective and subjective medical evidence should be discarded and replaced with a (sic) overwhelmingly prejudice evaluation as a whole." (Docket no. 22 at 9-10.) Plaintiff's argument has no basis. Nothing in the ALJ's decision suggests that she was biased against Plaintiff for any reason. The ALJ noted that Plaintiff was a convicted felon because Plaintiff testified that he was unable to find work due to his conviction status. The ALJ found that Plaintiff's inability to find work for this reason also supported her determination the he may be seeking disability benefits for financial gain. (TR 21.) The ALJ did not err in this regard.

In total, the ALJ spent nearly two pages of her decision discussing Plaintiff's credibility and providing a detailed rationale for her decision that Plaintiff was not wholly credible. (TR 21-22.) The ALJ's finding is sufficiently specific to make clear to Plaintiff and to the Court the weight she gave to Plaintiff's statements and the reasons for that weight. Plaintiff has provided no reason for the Court to disturb this finding.

### 4.    Plaintiff's New Evidence

Much of the evidence on which Plaintiff relied for his prior arguments was evidence that was not before the ALJ. And in cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). "The court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing Richardson, 402 U.S. at 401). Thus, the undersigned did not consider this additional evidence above.

Nevertheless, the court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).   This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g).   *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).   The party seeking remand has the burden of showing that it is warranted.   *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"   *Foster*, 279 F.3d at 357 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

Through his Motion, Plaintiff seeks to introduce the results of several X-Rays and MRIs of his spine and abdomen taken in early 2013 along with the results of his a hernia surgery performed in December of 2013.   (Docket no. 22 at 17-34.)   It is undisputed that this evidence is "new," as it was not presented to the ALJ.   Defendant argues, however, that Plaintiff has not shown good cause for failure to provide it before the ALJ's decision and that it is not material.   (Docket no. 26 at 20-26.)

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."   *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).   As Defendant points out, "[t]he mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement."   *Courter v. Comm'r of Soc. Sec.*, 479 Fed.Appx. 713, 725 (6th Cir. 2012).   The Sixth Circuit has taken a stricter stance on

18

good cause with respect to timing and thus requires that the claimant provide a valid reason for failing to acquire evidence prior to the hearing.  *Id.* (citing *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).   Here, Plaintiff asserts that he was unable to have these examinations performed before the ALJ's December 18, 2012 decision because he did not have health insurance until he received Medicare[2] in March of 2013.   (Docket no. 30 at 3.)   Plaintiff appears to have scheduled his MRI and his hernia surgery following his receipt of insurance benefits.   Thus, there is good cause to believe that if Plaintiff had been able to secure this evidence before the ALJ's decision, he would have done so.

For the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Foster*, 279 F.3d at 357 (citing *Sizemore*, 865 F.2d at 711)).   And evidence is only material if it relates to the plaintiff's condition before the ALJ's decision; evidence that the plaintiff's condition deteriorated or was aggravated is not relevant.   *See Oliver*, 804 F.2d at 966; *Sizemore*, 865 F.2d at 712.   Defendant argues that the imaging of Plaintiff's spine is immaterial because the ALJ would not have reached a different conclusion and that Plaintiff's hernia-surgery results are immaterial because they do not relate to Plaintiff's condition before the ALJ's decision.   (Docket no. 26 at 21-26.)

With regard to the imaging of Plaintiff's spine, Plaintiff argues that if the ALJ had this information, she would have reached a different result at Step III with regard to Listings 1.04 and

---

[2] Plaintiff's Reply Brief states that he received Medicare.  (Docket no. 30 at 3.)  But Plaintiff was only 48 years old in March 2013, and Medicare is only available to individuals over the age of 65 unless they meet certain criteria, which Plaintiff does not appear to meet.  Thus, it appears that Plaintiff may have meant Medicaid.  Regardless, for purposes of this Report and Recommendation, the undersigned accepts Plaintiff's contention that he received insurance benefits beginning in March 2013.

19

1.02.  (Docket no. 22 at 15.)   As Defendant asserts, regardless of whether the new images of Plaintiff's spine show a major dysfunction of a joint under Listing 1.02, the ALJ would not have changed her decision because Plaintiff can still ambulate effectively.   And although the imaging supports Plaintiff's claims of scoliosis, it does not show evidence of nerve root compression.   To the contrary, the imaging results state that:

- "There is moderate narrowing posterior intervertebral space at level of L5/S1. . . . Remainder of the intervertebral disc spaces are maintained.   Lumbar vertebral heights are maintained."   (Docket no. 22 at 20).

- There is "[n]o cord compression or cord signal abnormality within the cervical spine." (*Id.* at 28.)

- There are "[m]ultilevel shallow disc protrusion causing no central stenosis or cord compression."   (*Id.* at 29.)

Thus, the undersigned agrees with Defendant that his spinal imaging is immaterial and that this matter should not be remanded with regard to these imaging reports.

Nevertheless, with regard to his hernia surgery, the undersigned agrees with Plaintiff. Plaintiff asserts that as a result of his 2013 medical care, he learned that the abdominal pain he was suffering for "some time" was actually the result of a his undiagnosed hernia.   (Docket no. 22 at 12; docket no. 30 at 3.)   Defendant argues that Plaintiff's argument fails because (1) Plaintiff had examinations in 2009 and 2011 where his hernia was not diagnosed; (2) the ALJ was aware of Plaintiff's complaints of abdominal pain; and (3) the ALJ's decision relied, in part, on a finding that Plaintiff was not credible.   (Docket no. 26 at 21-22.)   While Plaintiff's 2009 and 2011 examinations are relevant, it is undisputed that Plaintiff did not have any relevant internal imaging performed because he did not have health insurance.   Thus, it is entirely plausible that Plaintiff had an undiagnosed hernia at that time, which is a determination that should be left to the ALJ.

But it is precisely for Defendant's latter two reasons that this matter should be remanded for consideration. The ALJ was aware of Plaintiff's complaints of abdominal pain and discredited them, in part, because of a lack of objective medical evidence and a lack of treatment. Thus, if Plaintiff were to present objective evidence to support his claims of abdominal pain, there is a reasonably probability that the ALJ could find Plaintiff's complaints credible, thus impacting her ultimate determination. Therefore, this matter should be remanded under sentence six for consideration of Plaintiff's hernia-related evidence.

### VI.  Conclusion

For the reasons stated herein, Plaintiff's Motion for Summary Judgment [22] should be GRANTED IN PART AND DENIED IN PART and Defendant's Motion for Summary Judgment [26] should be DENIED. This matter should be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence related to Plaintiff's hernia as discussed herein. Plaintiff's Motion for Summary Judgment should be denied with regard to all other arguments.

Additionally, the Court should deny Plaintiff's initial Motion for Summary Judgment (docket no. 11) as moot and strike Plaintiff's Motion to Allow Additional Response (docket no. 31) for violation of Local Rules.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).   Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.   The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.   The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:   July 2, 2015                          s/ Mona K. Majzoub
                                               MONA K. MAJZOUB
                                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on Plaintiff Johnny Turnboe and counsel of record on this date.

Dated:   July 2, 2015                          s/ Lisa C. Bartlett
                                               Case Manager